GEORGIANA M. ROSE, ADMINISTRATRIX OF THE ESTATE OF NELLIE M. HOOPER, DECEASED, APPELLANT, v. MONA K. HOOPER, EXECUTRIX UNDER THE WILL OF GEORGE M. HOOPER, DECEASED, ET AL., APPELLEES.

122 N. W. 2d 753

Filed July 19, 1963. No. 35411.

Sidner, Lee, Gunderson & Svoboda, for appellant.

Spear, Lamme & Simmons and Earl C. Fishbaugh, Jr., for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action in equity by the plaintiff Georgiana M. Rose, as administratrix of the estate of Nellie M. Hooper, deceased, to establish the right of said estate to $11,000 represented by paid-up certificates of stock in Nebraska State Savings and Loan Association, hereinafter called the Association. The defendants and appellees were said Association and Mona K. Hooper, executrix of the estate of George M. Hooper, deceased, and Mona K. Hooper, individually. The Association filed an answer by way of interpleader admitting it had the funds represented by said certificates, copies of which were attached to the answer; alleging it had no interest in the ownership thereof; and requesting the court to make a determination of the ownership of the money represented thereby. The matters in controversy therefore were between the plaintiff and the other defendants who will be designated as they were in the trial court throughout this opinion, except where it is necessary to name them.

A trial was had and at the close of plaintiff's evidence the defendants orally demurred to her evidence and moved that the petition be dismissed, which demurrer and motion were sustained by the trial court and judgment of dismissal was entered.

Plaintiff timely filed a motion for new trial which was overruled by the trial court, whereupon she has brought the matter to this court by appeal.

The plaintiff contends the trial court erred in sustaining said demurrer and motion, and that the judgment is contrary to the law and the evidence.

There is no substantial dispute concerning the facts involved herein. That the Association had the $11,000 and was holding the same for the estate of George M. Hooper was alleged in plaintiff's petition and admitted in the answer of defendants. John and Nellie M. Hooper were husband and wife. They lived at Ames, Dodge County, Nebraska. During the years 1950 to and in-

cluding 1956, they invested funds from time to time in the Association and received paid-up certificates in the aggregate sum of $11,000. The deposits were made by John Hooper. All the certificates were made payable either to John Hooper or Nellie M. Hooper, or the survivor of either, or in some cases to Nellie M. Hooper or John Hooper, or the survivor of either. Stock applications were made and filed in either instance, showing the accounts were jointly owned and that either of the payees could cash the same. Some of these were signed by both payees and some by John Hooper only. To what extent each owner contributed to the joint account does not appear though it is shown that Nellie M. Hooper had earnings of her own growing out of her employment as postmistress at Ames.

On April 24, 1957, John Hooper alone went to the Association's office at Fremont and surrendered all the certificates and signed withdrawal receipts therefor. A check in the sum of $11,000 was made out to John Hooper but was not endorsed by him. The following notation was made thereon "Credited to the account of John Hooper or George Hooper, Cert. #36743 & #36744." The investment or paid-up account of the Association was introduced in evidence which shows the issuance of the two certificates so numbered. The account was in the name of John Hooper or George M. Hooper or the survivor of either. The head bookkeeper testified the certificates so payable were issued, No. 36743 being for $10,000, and No. 36744 in the amount of $1,000. The account discloses that a certificate had previously been issued to them as payees with the same designation, it being No. 35768.

George M. Hooper was the son of John Hooper and Nellie M. Hooper, and their only child.

On February 7, 1959, John Hooper died leaving as his only heirs at law, his widow, Nellie M. Hooper, and his son George M. Hooper. He left a will leaving his wife a life estate in all his property and the remainder to his

son George M. Hooper. His son was named and appointed executor. The inventory and appraisement therein disclosed his estate to be valued at $42,130. It did not include the $11,000 in certificates.

On February 10, 1959, George Hooper was appointed conservator of Nellie Hooper.

On August 8, 1960, George M. Hooper died and the defendant Mona K. Hooper, executrix, was appointed as such under his will and as such claims an interest in the certificates.

On October 28, 1960, Nellie M. Hooper died and thereafter the plaintiff Georgiana Rose, who is her sister, was appointed administratrix of her estate. She is the plaintiff in this action.

Semiannual dividends were paid by checks on the $11,000 joint account represented by the certificates issued in the name of John Hooper or George M. Hooper or the survivor on or about the last of June and December of each year up to and including 1961. It was stipulated that the 1962 dividends would abide the determination of this action.

All dividend checks in the years 1957 and 1958 were payable to John Hooper or George Hooper and endorsed by John Hooper. Those of June 1959 were payable to George M. Hooper and were endorsed Geo. M. Hooper, John Hooper estate by Geo. M. Hooper, executor. In December 1959, they were payable as in June and endorsed Geo. M. Hooper, executor. Those of June 1960 were endorsed Geo. M. Hooper, conservator for Nellie M. Hooper. All subsequent checks were made payable to the George M. Hooper estate and were endorsed by Mona K. Hooper, executrix.

The evidence in the case fails completely to throw any light on whether or not Nellie M. Hooper knew of the withdrawal of the funds by her husband or whether she approved or disapproved of John Hooper reinvesting the proceeds of the account represented by the certificates in the joint names of himself and the only son

of the two joint owners. Nor is anything shown as to what transpired between John Hooper or George M. Hooper, or George and his mother in regard thereto. There are allegations in the plaintiff's petition by which fraud is attempted to be attributed to George M. Hooper, but the evidence is completely devoid of proof of fraud. It was alleged Nellie M. Hooper was incompetent at the time of the change of ownership of the certificates but no evidence of her incompetency was offered.

Section 8-317, R. R. S. 1943, governing certificates in building and loan associations, provides in part as follows: "Whenever any such certificates are made to the joint account of two or more persons, the shares represented thereby shall be payable to any one of them or to the survivor or to any one of the survivors of them."

In discussing this statute this court in Tobas v. Mutual Building & Loan Assn., 147 Neb. 676, 24 N. W. 2d 870, laid down these rules: "The words, 'Whenever any such certificates are made to the joint account of two or more persons, the account represented thereby shall be payable to the survivor,' contained in section 8-317, R. S. 1943, is intended for the protection of the building and loan association and, in addition thereto, fixes the property rights of the persons named, unless a contrary intent affirmatively appears from the terms used in the stock certificate.

"This provision of the statute is in derogation of the common law and eliminates all legal refinements and technicalities growing out of judicial precedents determining the nature of the transactions therein described since the adoption of the act.

"The Legislature has full power within constitutional limits to provide the manner of distribution of the estates of deceased persons and to define the method of creating the various types of estates in real and personal property. When such action is taken by clear and unambiguous language, this court is required to give effect thereto."

In the discussion in that case the opinion calls attention to the confusion, contradictions, and perplexing distinctions in the judicial precedents that had existed before the passage of this statute. Thereafter in the cited case the court says: "It seems to us that the Legislature has said when a building and loan association stock certificate is made to the joint account of two or more persons, that irrespective of previous judicial pronouncements concerning consideration, gifts, trusts, testamentary dispositions, and the multitude of other legal propositions contained in former cases on the subject, where one of the payees dies, the survivor or survivors are entitled to the full title thereto as a matter of statutory law. In other words, by causing the stock certificate to be issued in the form mentioned in the statute, the result therein set forth ipso facto obtains. If any other result is intended, the purchaser must manifest that intent by the language used." The cited case refers to the prior cases of McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599, and In re Estate of Johnson, 116 Neb. 686, 218 N. W. 739, which construed a similar provision applicable to deposits in banks, section 8-167, R. R. S. 1943, where that statute was construed in a similar manner.

The case of Tobas v. Mutual Building & Loan Assn., *supra,* involved the collection from the building and loan association of jointly owned certificates by the surviving joint owner. The several cases cited concerning joint bank accounts were deciding the same question. In the case now under consideration the original certificates payable to John Hooper or Nellie M. Hooper, or survivor, had all been cashed by John and converted into certificates payable to John Hooper or George M. Hooper or survivor in the lifetime of Nellie M. Hooper.

The case before us therefore relates to effect of the withdrawal of the account by one of two joint owners in the lifetime of them both and the reinvestment by the

drawer in property in which the other owner retains no interest.

We are cited to a very few cases decided by this court which purport to throw any light upon this problem. In Crowell v. Milligan, 157 Neb. 127, 59 N. W. 2d 346, this court discussed section 8-167, R. R. S. 1943, governing joint accounts in banks and apparently laid down these rules: "One of two joint owners of money, deposited in a joint account payable to either or the survivor, cannot divest the survivorship right in the jointly owned account by withdrawing the money and depositing it in his individual account, without the knowledge and consent of the other.

"Where one joint tenant without consent withdraws the whole or part of the fund of a joint bank account during the life of both tenants the joint tenancy is not destroyed, the proceeds retain the joint tenancy character wherever they can be traced unless the character is changed by agreement of the parties and the deprived tenant can exercise his right of survivorship as to the entire fund which has retained the joint tenancy character." A reading of the cited case however shows that it involved neither joint accounts in banks nor building and loan stock. The case dealt in part with certificates for elevator stock and in mortgage bonds which obviously are not governed by either section 8-167 or 8-317, R. R. S. 1943. It also involved a credit account on the books of an elevator originally in the name of Milligan. This account had been changed by the order of the decedent Milligan on the books of the elevator, into a joint account payable to Milligan and another as joint owners with rights of survivorship. Thereafter Milligan gave directions to withdraw the money from the elevator and place it in the bank account payable to Crowell, the president of the elevator as trustee, to be paid out upon Milligan's order only. Therefore, a joint account in a bank was never involved in the cited case. It ap-

pears therefore to have been decided on general legal principles and not on the statute cited.

The case of Whiteside v. Whiteside, 159 Neb. 362, 67 N. W. 2d 141, was one where a husband drew money from a joint bank account in the names of himself and wife, and the survivor as joint owners. With the proceeds withdrawn he bought cattle which were branded as his own and other property taken in his own name. This court there found the wife had full knowledge of the husband's actions and had no interest in the property so purchased.

In Nelson v. Rasmussen, 164 Neb. 274, 82 N. W. 2d 418, this court found fraud exercised by a son on his mother by which he had her sign a statement making him a joint owner with right of survivorship as to her bank account when she supposed she was signing an authorization for him to draw checks thereon in her lifetime. The court said in such a situation a resulting trust arose and the son was a constructive trustee of the account for the benefit of his mother's estate after her death. The decision in the cited case turned on the creation of the joint account and the fraud of the one joint owner at its inception.

The plaintiff in the case before us contends that the rules hitherto quoted in Crowell v. Milligan, *supra,* are applicable herein. The cited case is discussed both by the plaintiff and defendants. Moreover, plaintiff urges other rules to be adopted by us based on presumptions and holdings with respect to the burden of proof in such cases taken largely from decisions by courts of other jurisdictions. Some of these were based on the common law in the absence of similar statutes such as our own, or from states where similar statutory provisions had been construed to relate to the liability of the bank or building and loan association only and not to involve a law of property applicable to the depositors as well. Plaintiff also urges that certain endorsements on some

of the interest checks hitherto set out raise inferences favorable to her.

The defendants in turn confront us with other presumptions of law and rules concerning the burden of the proof urged as applicable to the present case under the issues raised by the pleadings. They maintain these are favorable to them and controlling herein.

Both section 8-317, R. R. S. 1943, concerning jointly owned certificates in building and loan company shares, and section 8-167, R. R. S. 1943, governing such accounts in banks, have hitherto been repeatedly construed by this court to be a rule of property governing the rights of the depositors.

Section 8-317, R. R. S. 1943, clearly and without ambiguity, provides that whenever certificates in a building and loan association are made to the joint account of two or more persons the "shares represented thereby shall be payable to any one of them."

" 'In the constructon of a statute, effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will.' " Pierce Co. v. Century Indemnity Co., 136 Neb. 78, 285 N. W. 91. The statute is clear and free from ambiguity, and concisely states that either owner of the certificates can withdraw the account. We see no reason to apply it as a rule of property in case of withdrawal by a surviving joint owner and refuse to give a literal interpretation to the statute in the case of a withdrawal made by any such owner in the lifetime of them both.

Under the interpretation of this court holding that section 8-317, R. R. S. 1943, determines and governs the property rights of the joint owners, it follows that the withdrawal by one joint owner of funds represented by certificates in a building and loan association payable to

the joint account of two or more persons destroys the character of the joint ownership in the funds so withdrawn and property purchased therewith regardless of the consent of the other joint owners to the withdrawal and even though the funds are reinvested by the drawer in property owned by him alone or with others.

The plaintiff herein contends such a rule will be the means of fraud and deceit on the part of such joint owners among themselves; that in many instances joint owners in such cases will be deprived of their property and life savings by action of the other owner; and that in certain instances this might follow cannot be denied, but the statute clearly provides that in such cases either joint owner may withdraw the funds. Persons are charged with knowledge of the statute. The depositors or investors choose their associates when they create such accounts and should bear the responsibility arising from their choice. Moreover, in many cases such as the situation now considered by us, the determination of the property rights by application of technical rules governing gifts, trusts, and presumptions arising from such cases would do little to establish the real intention of the joint owners and would in many cases thwart their real intent to as great an extent as the action of the owners under the statute. It is conceded by both plaintiff and defendants in the present case that it is not known whether Nellie M. Hooper knew of the withdrawal of the funds from the joint account by her husband. Neither is it known whether she approved of the change of the account if she knew of it, or whether she disapproved. It seems that the statute was intended to fix the property rights of the joint owners in such cases and that the Legislature by enacting section 8-317, R. R. S. 1943, intended so to do as hitherto determined by this court in Tobas v. Mutual Building & Loan Assn., *supra*.

Our decision in this case does not agree with the citations of law herein quoted from Crowell v. Milligan,

*supra,* if they were meant to apply to joint certificates in building and loan associations or joint bank accounts. Therefore, the case of Crowell v. Milligan, *supra,* insofar as it conflicts with this opinion, is hereby overruled.

It follows that the judgment of the trial court holding the accounts represented by the certificates payable to John Hooper or George M. Hooper became the property of the latter on the death of the other joint owner and are now a part of the estate of the survivor, George M. Hooper, was correct and should be and is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.